**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| DORIS MURRAY, | ) | |
| | ) | CASE NO. 1:13-cv-215 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | **MEMORANDUM OPINION & ORDER** |
| Defendant. | ) | |

Plaintiff Doris Murray ("Murray") challenges the final decision of the Commissioner of

Social Security, Michael J. Astrue ("Commissioner"), denying her claim for a Period of

Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income

("SSI") under Title(s) II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423,

1381 *et seq*.  This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of

the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is AFFIRMED.

**I.  Procedural History**

On May 6, 2010, Murray filed an application for POD, DIB and SSI alleging a disability

onset date of January 1, 1998.  (Tr. 10.)  Her application was denied both initially and upon

reconsideration. Murray timely requested an administrative hearing.

On September 20, 2011, an Administrative Law Judge ("ALJ") held a hearing during which Murray, represented by counsel, and an impartial vocational expert ("VE") testified. On November 16, 2011, the ALJ found Murray was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. The ALJ's decision became final when the Appeals Council denied further review.

## II. Evidence

### Personal and Vocational Evidence

Age forty-four (44) at the time of her administrative hearing, Murray is a "younger" person under social security regulations. *See* 20 C.F.R. § 404.1563(c) & 416.963(c). (Tr. 18.) Murray has at least a high school education and past relevant work as a fast food worker. (Tr. 17-18.)

## III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

---

[1] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work

2

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Murray was insured on her alleged disability onset date, January 1, 1998 and remained insured through March 31, 2007. (Tr. 12.) Therefore, in order to be entitled to POD and DIB, Murray must establish a continuous twelve month period of disability commencing between these dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A disabled claimant may also be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

### IV. Summary of Commissioner's Decision

The ALJ found Murray established medically determinable, severe impairments, due to depression, schizoaffective disorder, and headaches; however, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 12.) Murray was found incapable of performing her past relevant work, but was determined to have a Residual Functional Capacity ("RFC") for a full range of work at all exertional levels

---

experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

with some non-exertional limitations.  (Tr. 14, 17.)  The ALJ then used the Medical Vocational

Guidelines ("the grid") as a framework and VE testimony to determine that Murray was not

disabled.  (Tr. 18-19.)

### V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the

record to support the ALJ's findings of fact and whether the correct legal standards were applied.

*See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed

if the administrative law judge's findings and inferences are reasonably drawn from the record or

supported by substantial evidence, even if that evidence could support a contrary decision.");

*Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  Substantial evidence has been

defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular

conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than

a preponderance."  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v.*

*Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists

in the record substantial evidence to support a different conclusion.  *Buxton v. Halter*, 246 F.3d

762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also*

*Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could

also support another conclusion, the decision of the Administrative Law Judge must stand if the

evidence could reasonably support the conclusion reached.  *See Key v. Callahan*, 109 F.3d 270,

273 (6th Cir. 1997).")  This is so because there is a "zone of choice" within which the

Commissioner can act, without the fear of court interference.  *Mullen*, 800 F.2d at 545 (*citing*

*Baker v. Heckler*, 730 F.2d 1147, 1150 (8ᵗʰ Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal.  *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6ᵗʰ Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6ᵗʰ Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."  *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7ᵗʰ Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI.  Analysis

Murray claims the ALJ erred by ascribing insufficient weight to the opinions of examining medical sources.  (ECF No. 17 at 8-11.)  Specifically, Murray argues that significant weight should have been given to the opinions of Jose Mendez, M.D., an examining psychiatrist, and

David V. House, Ph. D., a consultative psychological examiner.  *Id*. at 9-10.

On July 16, 2010, Dr. House performed a clinical interview at the request of the Bureau of Disability Determination.  (Tr. 275-81.)  Dr. House noted that Murray denied ever having been to a psychiatric hospital, receiving mental health counseling, or taking psychotropic medication.  (Tr. 277.)  She did, however, complain of depression and bad nerves.  *Id*.  Dr. House noted that Murray's grooming and hygiene were adequate, that she spoke in a subdued manner, and made adequate eye contact throughout the exam.  (Tr. 278.)  Murray told Dr. House that she had been depressed since she was a child and had crying spells once every two weeks.  *Id*.  She denied any feelings of guilt or recent thoughts of intention to injure herself or others.  *Id*.  She "complained of panic attacks to the diagnostic criteria of four episodes in the last six months."  (Tr. 278-79.)  While no delusional material was elicited during the interview, Murray complained of auditory effects (i.e. hearing voices) and visual effects (seeing shadows).  (Tr. 279.)  She did not present as paranoid or grandiose, and did not appear suspicious or evasive.  *Id*.  Dr. House opined that Murray suffers from major depressive disorder, severe, with psychotic features.  (Tr. 280.)  He noted that Murray was markedly limited in her ability to maintain attention, concentration, persistence, and pace, and to withstand stress and pressure associated with day to day work activity.  *Id*.  She was moderately limited in her ability to understand, remember, and follow directions, and to relate to others and deal with co-workers, supervisors, and the general public.  *Id*.  Dr. House assigned Murray a Global Assessment of Functioning ("GAF") score of 40.[2]  (Tr.

---

[2]  A GAF score between 31 and 40 indicates some impairment in reality testing or communication or major impairment in several areas such as work or school, family relations, judgment, thinking, or mood.  A person who scores in this range may have illogical, obscure or irrelevant speech, and may avoid friends, neglect family, and be unable to work.  *See Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV) at 34 (American Psychiatric

281.)

On May 2, 2011, Dr. Mendez performed a Community Mental Health Assessment.  (Tr. 346.)  Dr. Mendez noted Murray had no previous psychiatric history.  (Tr. 346-47.)  Murray reported depression throughout most of her life, reported frequent mood swings, and that she heard voices urging her to kill herself.  (Tr. 347.)  On mental status examination, Murray had good hygiene; was oriented to time, person, and place; had clear speech; logical thought process; good judgment and insight; sustained attention span and concentration; used appropriate language; but had depressed mood; poor recent and remote memory; and, was positive for abnormal/psychotic thoughts.  (Tr. 349.)  Dr. Mendez diagnosed schizophrenic disorder and prescribed Prozac, Trazodone, Abilify, and Elavil.  (Tr. 348-49.)  He assigned her a GAF score between 41 and 50.[3]  *Id.*

There is a general order of preference to first give greater weight to the opinion from a treating physician followed next in line by an opinion from a non-treating examining physician.  *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir.2010); *Rogers*, 486 F.3d at 245; 20 C.F.R. §§ 404.1527(c)(1–2) & 416.927(c)(1–2) (defining "Examining relationship" and "Treatment relationship").  Neither Dr. Mendez nor Dr. House qualify as a treating source under the regulations.  An ALJ must give "good reasons" for the weight given to a treating physician's

---

Association, 4th ed. revised, 2000).  It bears noting that a recent update of the manual eliminated the GAF scale because of "its conceptual lack of clarity ... and questionable psychometrics in routine practice."  *See Diagnostic and Statistical Manual of Mental Disorders* (DSM-5) at 16 (American Psychiatric Association, 5th ed., 2013).

[3] A GAF score between 41 and 50 indicates serious symptoms or a serious impairment in social, occupational, or school functioning.  A person who scores in this range may have suicidal ideation, severe obsessional rituals, no friends, and may be unable to keep a job.  *See Diagnostic and Statistical Manual of Mental Disorders*, *supra*, at 34.

7

opinion, 20 C.F.R. § 404.1527(c)(2); *see also Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir.2007) ("Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits."). However, with regard to non-treating, but examining sources, such as Dr. Mendez and Dr. House, "the agency will simply '[g]enerally [ ] give more weight to the opinion of a source who examined [the claimant] than to the opinion of a source who has not examined'" her. *Ealy*, 594 F.3d at 514. Notably, the procedural "good reasons" requirement does not apply to non-treating physicians. *Smith*, 482 F.3d at 876 (explaining that "[i]mportantly ... this reasons giving requirement exists only for § 404.1527(d)(2), and not for the remainder of § 404.1527" and concluding: "[i]n the absence of treating-source status for these doctors, we do not reach the question of whether the ALJ violated *Wilson* by failing to give reasons for not accepting their reports").

In addition, opinions from agency medical sources are considered opinion evidence. 20 C.F.R. § 416.927(f). The regulations mandate that "[u]nless the treating physician's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do work for us." 20 C.F.R. §§ 404.1527(f)(2)(ii) & 416.927(f)(2)(ii). More weight is generally placed on the opinions of examining medical sources than on those of non-examining medical sources. *See* 20 C.F.R. §§ 404.1527(d)(1) & 416.927(d)(1). However, the opinions of non-examining state agency medical consultants can, under some circumstances, be given significant weight. *Hart v. Astrue*, 2009

WL 2485968, at *8 (S.D. Ohio  Aug. 5, 2009).  This occurs because nonexamining sources are viewed "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act."  S.S.R. 96–6p, 1996 WL 374180.  Thus, the ALJ weighs the opinions of agency examining physicians and agency reviewing physicians under the same factors as treating physicians including weighing the supportability and consistency of the opinions, as well as the specialization of the physician.  *See* 20 C.F.R. § 416.972(d), (f).  Although, "[a]dministrative law judges and the Appeals Council are not bound by findings made by State agency or other program physicians and psychologists, they may not ignore these opinions and must explain the weight given to the opinions in their decisions."  SSR 96-6p, 1996 WL 374180, *2 (Jul. 2, 1996).  However, this requirement should not be confused with the standard required for explaining the weight ascribed to a treating physician.  The Sixth Circuit has held that the regulation requiring an ALJ to provide good reasons for the weight given a treating physician's opinion does not apply to an ALJ's failure to explain his favoring of one examining physician's opinion over another.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496 (6th Cir. 2006).

The ALJ ascribed "less weight" to the opinion of Dr. Mendez as it related to the GAF score, which is indicative of serious symptoms.  (Tr. 16.)  The ALJ explained that the GAF score "appears to be based solely on the claimant's subjective complaints, which are not corroborated by the medical evidence contained within the case file."  *Id.*  Similarly, the ALJ gave less weight to Dr. House's opinion as it resulted from a one-time interview, appeared to be based on Murray's subjective complaints, and was unsupported by the medical records in the file.  Moreover, the ALJ ascribed significant weight to the opinions of state agency reviewing

physicians – Patricia Semmelman, Ph.D. and Karen Terry, Ph. D. (Tr. 16, Exhs. 5A & 8A.)

On August 16, 2010, Dr. Semmelman reviewed Murray's records, which included Dr. House's report, and opined that Murray experienced mild restrictions in activities of daily living, mild difficulties in social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. (Tr. 57-58.) She also found that Murray was either not significantly limited or no more than moderately limited in every category of workplace functioning.[4] (Tr. 59-61.)

On November 11, 2010, Dr. Terry found that Murray had mild restrictions in activities of daily living, mild difficulties in social functioning, and moderate difficulties in concentration, persistence, or pace. (Tr. 80.) Dr. Terry found that Murray was not limited, not significantly limited, or only moderately limited in all categories of workplace functioning. (Tr. 82-84.) Dr. Terry also found Murray less than credible for reasons similar to those expressed by Dr. Semmelman. (Tr. 84.)

The ALJ's decision fully complies with the procedural requirements set forth by the regulations as it pertains to non-treating, examining physicians. The opinion makes sufficiently clear that the ALJ found that there was simply no medical evidence of record to support the mental limitations found by Dr. House and Dr. Mendez. The ALJ's observation that the limitations are based primarily on Murray's self-reported complaints is not unreasonable,

---

[4] Dr. Semmelman noted several inconsistencies in Murray's statements to Dr. House that were contradicted or unsupported by the record. For example, Murray told Dr. House she was in special education while her application stated she was in regular classes. (Tr. 61.) Murray also told Dr. House she did "nothing" while her treatment notes showed that she exercised regularly, walked 10-15 miles, and claimed to have pain in her hands from using them regularly. (Tr. 61, 68.) She also reported to Dr. House that she had four panic attacks in the past six months, but her treatment records did not substantiate these complaints. *Id.* Based on these and other inconsistencies, Dr. Semmelman opined that Murray was less than credible. (Tr. 61.)

10

especially in light of the inconsistencies identified by the Dr. Semmelman and Dr. Terry.  The ALJ himself found Murray less than credible in alleging an incapacity for all work, noting that she appeared to be self-limited.  (Tr. 17.)  He further noted that Murray only appears to have begun treatment for her mental impairments after applying for benefits.  *Id*.  The ALJ's decisions satisfies the explanation requirement of the regulations.  While Murray apparently desires a *de novo* review of the non-treating physician opinions, it is not this Court's function to do so.  Although the opinions of examining physicians are generally given more weight than those of non-examining medical sources, it is not *per se* error for an ALJ to favor the opinion of a non-examining physician, especially where the ALJ explained his reasoning.  As the ALJ properly assessed the aforementioned opinions and explained his reasons for the weight ascribed to each, Murray's sole assignment of error is without merit.

### VII.  Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence.  Accordingly, the decision of the Commissioner is AFFIRMED and judgment is entered in favor of the defendant.

IT IS SO ORDERED.

/s/ Greg White
U.S. Magistrate Judge

Date: September 26, 2013